UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

MICHAEL M.                                    :
                                              :
v.                                            :        C.A. No. 23-00320-LDA
                                              :
MARTIN O'MALLEY, Commissioner                 :
Social Security Administration                :

**MEMORANDUM AND ORDER**

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint on August 4, 2023 seeking to reverse the decision of the Commissioner.  On February 10, 2024, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (ECF No. 17).  On February 28, 2024, the Commissioner filed a Motion to Affirm the Commissioner's Decision. (Document No. 18).  Plaintiff elected not to file a reply brief.

With the consent of the parties, this case has been referred to me for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, Plaintiff's Motion to Reverse (Document No. 17) is DENIED and the Commissioner's Motion to Affirm (ECF No. 18) is GRANTED.

**I.      PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on October 18, 2021 alleging disability since April 15, 2020. (Tr. 265-266).  The application was denied initially on December 21, 2021 (Tr. 127-133) and on reconsideration on January 12, 2022.  (Tr. 135-144).  Plaintiff requested an Administrative Hearing.

Hearings were held on June 9, 2022 and August 24, 2022 before Administrative Law Judge Jason Mastrangelo (the "ALJ") at which counsel for Plaintiff, a medical expert, and a vocational expert appeared and/or testified.  (Tr. 76-121, 33-75).  The ALJ issued an unfavorable decision to Plaintiff on September 15, 2022.  (Tr. 13-28).  On May 31, 2023, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-3).  A timely appeal was then filed with this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's RFC assessment is severely deficient and not supported by the totality of the medical record.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's findings are supported by substantial evidence and must be affirmed.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

-2-

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1ˢᵗ Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11ᵗʰ Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1ˢᵗ Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6ᵗʰ Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5ᵗʰ Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1ˢᵗ Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11ᵗʰ Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause

> for the failure to incorporate such evidence into the record in a prior
> proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  Id.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Opinion Evidence

For applications like this one, filed on or after March 27, 2017, the Administration has fundamentally changed how adjudicators assess opinion evidence.  The requirements that adjudicators assign "controlling weight" to a well-supported treating source's medical opinion that is consistent with other evidence, and, if controlling weight is not given, must state the specific weight that is assigned – are gone.  See Shaw v. Saul, No. 19-cv-730-LM, 2020 WL 3072072, *4-5 (D.N.H. June 10, 2020) citing Nicole C. v. Saul, Case No. cv 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020)

(citing 20 C.F.R. § 404.1520c(a)). Under the newly applicable regulations, an ALJ does not assign specific evidentiary weight to any medical opinion and does not defer to the opinion of any medical source (including the claimant's treating providers). 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the relative persuasiveness of the medical evidence in terms of five specified factors. Id.

The five factors the ALJ considers in evaluating the persuasiveness of a medical opinion are supportability (the relevance of the opinion's cited objective medical evidence), consistency (how consistent the opinion is with all of the evidence from medical and non-medical sources), treatment/examining relationship (including length of treatment relationship, frequency of examinations, purpose of treatment relationship, and existence and extent of treatment/examining relationship), specialization (the relevance of the source's specialized education or training to the claimant's condition), and what the Administration refers to as "other factors" (the medical source's familiarity with the claimant's medical record as a whole and/or with the Administration's policies or evidentiary requirements). Shaw, 2020 WL 3072072 at *4 citing 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5) (emphasis supplied). Of the five factors, the "most important" are supportability and consistency. Id. §§ 404.1520c(a), 404.1520c(b)(2), 416.920c(a), 416.920c(b)(2).

While the ALJ must consider all five of the factors in evaluating the persuasiveness of medical evidence, when preparing the written decision, the ALJ is, in most cases, only required to discuss application of the supportability and consistency factors. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Only where contrary medical opinions are equally persuasive in terms of both supportability and consistency is the ALJ required to discuss their relative persuasiveness in terms of the treatment/examining relationship, specialization, and other factors. Id. §§ 404.1520c(b)(3), 416.920c(b)(3). In addition, where a single medical source offers multiple opinions, the ALJ is not

required to discuss each opinion individually, but instead may address all of the source's opinions "together in a single analysis." Id. §§ 404.1520c(b)(1), 416.920c(b)(1).

Moreover, while the ALJ must consider all of the relevant evidence in the record, Id. §§ 404.1520b(a)-(b), 416.920b(a)-(b), the ALJ need not discuss evidence from nonmedical sources, including, e.g., the claimant, the claimant's friends and family, educational personnel, and social welfare agency personnel. Id. §§ 404.1502(e), 404.1520c(d), 416.902(j), 416.920c(d). And while the regulations require the ALJ to discuss the relative persuasiveness of all medical source evidence, Id. §§ 404.1520c(b), 416.920c(b), the claimant's impairments must be established specifically by evidence from an acceptable medical source, Id. §§ 404.1521, 416.921.

"Acceptable medical sources" are limited to physicians and psychologists, and (within their areas of specialization or practice) to optometrists, podiatrists, audiologists, advanced practice registered nurses, physician assistants, and speech pathologists. Id. §§ 404.1502(a), 416.902(a). Evidence from other medical sources, such as licensed social workers or chiropractors, is insufficient to establish the existence or severity of a claimant's impairments. Id. Finally, the ALJ need not discuss evidence that is "inherently neither valuable nor persuasive," including decisions by other governmental agencies or nongovernmental entities, findings made by state disability examiners at any previous level of adjudication, and statements by medical sources as to any issue reserved to the Commissioner. Id. §§ 404.1520b(c), 416.920b(c).

## B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the

-6-

right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.

<u>Wells v. Barnhart</u>, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. <u>Seavey</u>, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. <u>Deblois v. Sec'y of HHS</u>, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. <u>Id.</u>

## E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. <u>Seavey</u>, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). <u>Seavey</u>, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. <u>Id.</u>; <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. Social Security Ruling ("SSR") 16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)     Treatment, other than medication, for relief of pain;

(5)     Functional restrictions; and

(6)     The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).  However, the individual's statements about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms."  SSR 16-3p, 2017 WL 4790249, at *49465.

## 2.     Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).  Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25,

2017).  It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings.  SSR 16-3p, 2017 WL 4790249, at *49465.

## V.    APPLICATION AND ANALYSIS

### A.    The ALJ's Decision

The ALJ determined Plaintiff had the severe impairments of substance addiction disorder, depressive disorder, and anxiety disorder.  (Tr. 19).  The ALJ found the severity of Plaintiff's impairments, including substance use, met the criteria of § 12.08 in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 19-20).  Accordingly, the ALJ determined Plaintiff's alcohol use was material to the determination of disability and noted that "the record indicates that [he] is very functional when sober." (Tr. 23).

The ALJ then determined that if Plaintiff stopped substance use, he would not have an impairment or combination of impairments that met any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23).  Without considering substance abuse, the ALJ found Plaintiff would have the RFC to perform the full range of work at all exertional levels, except he is limited to carrying out simple tasks and instructions, engaging in no more than occasional interaction with supervisors, coworkers, and the general public, and tolerating only simple changes in routine work setting.  (Tr. 25). Based on this RFC, the ALJ determined Plaintiff was unable to perform his past relevant work as a manufacturing engineer.  (Tr. 27).  However, considering his age, education, work experience, and RFC, if Plaintiff stopped his substance use, there were jobs available in significant numbers in the national economy that he could perform, (Tr. 27-28), including representative occupations such as warehouse worker, DOT code 922.687-058, medium unskilled with 28,000 jobs nationally; hospital

housekeeper 323.687-014, medium unskilled with 41,000 jobs nationally; and dishwasher/kitchen helper, DOT code 318.687-010, medium unskilled with 280,000 jobs nationally. (Tr. 28). Therefore, the ALJ found that Plaintiff was not disabled. Id.

**B.     Plaintiff Has Shown No Error in the ALJ's Evaluation of the Materiality of His Substance Use**

Plaintiff challenges the ALJ's RFC assessment and argues that it is not supported by the "totality" of the medical record. (ECF No. 17-1 at p. 1). Plaintiff posits that he "persevered as long as he could – in spite of a long history of maladaptive use of alcohol – until the anxiety, depression and stress could no longer be managed." Id. at p. 19. Plaintiff relies, in part, upon his treating therapist's opinion that his alcohol use is "self-medicating" for his depression, anxiety and stress. Id. at p. 17. The Commissioner counters that Plaintiff is essentially arguing that his disabling mental impairments lead to alcohol abuse, rather than his use of alcohol contributing to an exacerbation of symptoms. (ECF No. 18 at pp. 1-2). He further accurately points out that this distinction was the subject of conflicting opinion evidence, and Plaintiff is effectively asking this Court to improperly reweigh the evidence. As discussed below, I am compelled by the record to agree with the Commissioner.

The ALJ found Plaintiff's impairments, including substance abuse, affected his functioning to the point his impairments met the severity of Listing 12.08. He determined that Plaintiff had marked limitations in concentrating, persisting, or maintaining pace, as well as adapting or managing oneself. (Tr. 20). The ALJ found the "longitudinal medical evidence of record indicates significant exacerbations of depression and anxiety and significant decline in work and adaptive functioning during periods of active alcohol use." (Tr 20). For example, the ALJ referenced Plaintiff's history of partial and inpatient treatment at Butler Hospital "in the context of alcohol abuse." Id. Also, he observed that Plaintiff indicated a general decline in functioning in the context of increased alcohol use ("12-18 beers daily or 1.5 bottles of wine"), including sleep disturbance, decreased appetite,

decreased motivation, and truancy from work.  (Tr. 431).  The ALJ cited an example from October 2021, where Plaintiff reported a six-month absence from therapy because he shut down and was not doing "things that he should do…" and "goes into avoidance mode…" and was drinking eight to nine beers daily for six months.  (Tr. 23, 665).

Dr. John Parsons conducted a consultative examination in December 2021.  (Tr. 622).  The mental status examination performed by Dr. Parsons revealed Plaintiff was anxious, tense, worried, and tangential. He exhibited decreased memory, was distractible, and had questionable judgment.  (Tr. 628).  Plaintiff reported consuming alcohol five days per week at the time and taking Klonopin.  (Tr. 625).

Plaintiff's therapist, William Zinno, testified at the supplemental hearing.  Mr. Zinno testified that Plaintiff "turned to alcohol" when he experienced symptoms of anxiety and depression.  (Tr. 40-41).  He testified that Plaintiff would work, take leave for alcohol dependency treatment, go back to work, and then take leave again in a cycle.  (Tr. 41-42).  Mr. Zinno testified that when Plaintiff isn't working, his emotional/psychological state is improved.  (Tr. 43).

The issue presented is whether substantial evidence supports the ALJ's finding that Plaintiff's functioning improved when he was sober.  (Tr. 23-25).  Absent substance abuse, the ALJ found that Plaintiff's impairments no longer met Listing 12.08; however, he was limited to simple tasks and was unable to perform his past profession.  Id.  The record also reflects that when his drinking was curtailed, Plaintiff cared for his mother, made friends, went to the gym, traveled, socialized, and kept busy.  (Tr. 658, 671, 684, 691, 699, 726, 728).  Plaintiff also helped provide childcare for his two-year-old nephew and cared for his mother who was undergoing chemotherapy.  (Tr. 691, 693, 742).  At the end of a partial hospitalization, Plaintiff reported his sobriety resulted in an improved mood, feeling more organized, doing more at home, and being able to perform tasks he had been avoiding.  (Tr. 25, 432).  Looking at the record as a whole, the ALJ reasonably found that Plaintiff consistently reported doing

well and keeping busy when he was sober, including vacationing, working out at the gym, doing yard work, preparing his house for sale and visiting friends.  (Tr. 26; supported at Tr. 422, 441, 511, 520).

The ALJ also reasonably relied upon the contrast in Plaintiff's presentation to Dr. Parsons compared to his outpatient providers which consistently reveal stable mood, normal speech, linear thoughts, and intact attention, concentration, and memory.  (Tr. 566-620).  The ALJ noted further inconsistency in December 2021 between Plaintiff's presentation to Dr. Parsons and presentation to his therapist shortly thereafter in which he reported feeling better, stable, and socializing more.  (Tr. 21, 658).

The ALJ accurately noted that Mr. Zinno did not perform mental status examinations on Plaintiff during the period, but medication prescriber Suzanne Larlham did them monthly.  (Tr. 26). Those mental status examinations consistently show Plaintiff with stable mood, subdued affect, and denial of any problematic anxiety.  (Tr. 566-621).  His speech was normal, and thoughts were linear and goal directed.  Attention, concentration, and memory were normal.  Id.  Plaintiff exhibited fair judgment and insight.  Id.

Plaintiff also argues that the ALJ's reliance on Dr. Killenberg, the reconsideration psychiatric state agency consultant, does not constitute substantial evidence because it conflicts with the initial determination.[1]  (ECF No. 17-1 at p. 15).  However, it is clear that the findings of a state agency expert consultant can constitute substantial evidence in support of an ALJ's decision.  See Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991); Costa v. Colvin, No. 15-540ML, 2016 WL 7974120, at *7 (D.R.I. Dec. 21, 2016), R. & R. adopted, 2017 WL 354284 (D.R.I. Jan. 24,

---

[1] Plaintiff faults the ALJ for favoring the opinions of the DDS reviewing psychiatrist, Dr. Killenberg, over those of DDS reviewing psychologist, Dr. Houston.  (ECF No. 17-1 at pp. 15-16).  However, it is plainly within the ALJ's province to weigh conflicting opinions, and his reasons here for favoring Dr. Killenberg over Dr. Houston are reasonable and supported by the record.  While Plaintiff focuses on the ALJ's observation that Dr. Houston did not review all of the records available to Dr. Killenberg (Tr. 23), that was clearly the least significant reason for the ALJ's determination, and the ALJ provided several other well-supported reasons for his decision that Dr. Killenberg's opinions were more persuasive because they were consistent with and supported by the record.  (Tr. 26-27).

-14-

2017).  Here, Dr. Killenberg supported her findings and cited to a significant amount of evidence in the record that is consistent with those findings.  Therefore, Dr. Killenberg's assessment in this case is supported by the record and, thus, constitutes substantial evidence.

Finally, Plaintiff challenges the ALJ's evaluation of the January 2022 opinion from Mr. Zinno. (Tr. 666-668).   Mr. Zinno listed depressive disorder and alcohol abuse disorder (in remission) as Plaintiff's diagnoses, (Tr. 666), and opined that Plaintiff had a moderately severe restriction in the ability to handle work pressure, coworkers, supervisors, or carry out instructions.  (Tr. 666-667). Because Mr. Zinno is a long-term treating source who observed Plaintiff for a long time, the ALJ indicated that he considered this opinion "very carefully."  (Tr. 23).  However, the ALJ ultimately and reasonably found that the record did not support the level of severity in Mr. Zinno's opinion in the absence of substance abuse.  Id.  For example, the ALJ noted that Mr. Zinno did not perform any mental status examinations while treating Plaintiff, whereas his medication provider, Ms. Larlham, performed them monthly.  (Tr. 26).  Ms. Larlham's mental status examinations consistently showed Plaintiff had stable mood, subdued affect, and denied any problematic anxiety.  (Tr. 566-621).  Plaintiff's speech was normal; his thoughts were linear and goal-directed; his attention, concentration, and memory were normal; and he exhibited fair judgement and insight.  Id.  As for Mr. Zinno's opinion that Plaintiff's alcohol use was not material to the finding of disability, (Tr. 713), the law is clear that this opinion is inherently neither valuable nor persuasive because it is one reserved to the Commissioner.  20 C.F.R. § 404.1520b(c)(3).  The ALJ did, however, find the portion of Mr. Zinno's opinion that Plaintiff could only perform simple tasks to be supported and consistent with the record.  (Tr. 23).

Plaintiff argues that the ALJ's findings are not supported by the "totality" of the record. However, the standard is substantial evidence, and Plaintiff has not shown the absence of such evidence supporting the ALJ's decision.  While some evidence may support Plaintiff's position, the "totality" of

this record contains conflicting opinion evidence, and the ALJ provided adequate support for his findings.  The ALJ's decision must be affirmed.

## VI.    CONCLUSION

For the reasons discussed herein, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 17) is DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 18) is GRANTED.  Further, the Clerk shall enter Final Judgment in favor of Defendant.


  /s/  Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 26, 2024